AUSAs: Jun Xiang / Kathryn Wheelock

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

# 24 MAG 4180

UNITED STATES OF AMERICA

v.

SAMUEL GONZALEZ CASTRO,
    a/k/a "Klei,"
EFERSON MORILLO-GOMEZ,
    a/k/a "Jefferson," and
JARWIN VALERO-CALDERON,
    a/k/a "La Fama,"

                Defendants.

## SEALED COMPLAINT

Violations of 18 U.S.C. §§ 371, 1951, 2119, 924(c), 924(o), and 2

COUNTY OF OFFENSE:
BRONX

SOUTHERN DISTRICT OF NEW YORK, ss.:

MICHAEL BONNER, being duly sworn, deposes and says that he is a Special Agent with Homeland Security Investigations ("HSI"), and charges as follows:

## COUNT ONE
### (Conspiracy to Commit Carjacking)

1.      On or about September 30, 2024, in the Southern District of New York and elsewhere, SAMUEL GONZALEZ CASTRO, a/k/a "Klei," EFERSON MORILLO-GOMEZ, a/k/a "Jefferson," and JARWIN VALERO-CALDERON, a/k/a "La Fama," the defendants, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit an offense against the United States, to wit, carjacking, in violation of Title 18, United States Code, Section 2119.

2.      It was a part and object of the conspiracy that SAMUEL GONZALEZ CASTRO, a/k/a "Klei," and EFERSON MORILLO-GOMEZ, a/k/a "Jefferson," the defendants, and others known and unknown, acting at the direction of JARWIN VALERO-CALDERON, a/k/a "La Fama," the defendant, would and did, with the intent to cause death and serious bodily harm, take a motor vehicle that had been transported, shipped, and received in interstate and foreign commerce from the person and presence of another by force and violence and by intimidation.

## Overt Act

3.      In furtherance of the conspiracy and to effect the illegal object thereof, the following overt act, among others, were committed in the Southern District of New York and elsewhere:

a.      On or about September 30, 2024, SAMUEL GONZALEZ CASTRO, a/k/a "Klei," and EFERSON MORILLO-GOMEZ, a/k/a "Jefferson," the defendants—acting at the

direction of JARWIN VALERO-CALDERON, a/k/a "La Fama," the defendant—brandished and pointed guns at another individual (the "Victim") and forcibly took possession of the Victim's car in the Bronx, New York.

(Title 18, United States Code, Section 371.)

## COUNT TWO
### (Carjacking)

4.     On or about September 30, 2024, in the Southern District of New York and elsewhere, SAMUEL GONZALEZ CASTRO, a/k/a "Klei," EFERSON MORILLO-GOMEZ, a/k/a "Jefferson," and JARWIN VALERO-CALDERON, a/k/a "La Fama," the defendants, with the intent to cause death and serious bodily harm, took a motor vehicle that had been transported, shipped, and received in interstate and foreign commerce from the person and presence of another by force and violence and by intimidation, and aided, abetted, counseled, commanded, induced, and procured the same, to wit, CASTRO and MORILLO-GOMEZ—acting at the direction of VALERO-CALDERON—brandished and pointed guns at the Victim and forcibly took possession of the Victim's car in the Bronx, New York.

(Title 18, United States Code, Sections 2119 and 2.)

## COUNT THREE
### (Hobbs Act Robbery)

5.     On or about September 30, 2024, in the Southern District of New York and elsewhere, SAMUEL GONZALEZ CASTRO, a/k/a "Klei," EFERSON MORILLO-GOMEZ, a/k/a "Jefferson," and JARWIN VALERO-CALDERON, a/k/a "La Fama," the defendants, knowingly committed robbery, as that term is defined in Title 18, United States Code, Section 1951(b)(1), and thereby obstructed, delayed, and affected commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), and aided, abetted, counseled, commanded, induced, and procured the same, to wit, CASTRO and MORILLO-GOMEZ—acting at the direction of VALERO-CALDERON—brandished and pointed guns at the Victim and forcibly took from the Victim keys and titles for vehicles owned by a car dealership that does business in New York and New Jersey.

(Title 18, United States Code, Sections 1951 and 2.)

## COUNT FOUR
### (Firearms Use, Carrying, and Possession)

6.     On or about September 30, 2024, in the Southern District of New York and elsewhere, SAMUEL GONZALEZ CASTRO, a/k/a "Klei," EFERSON MORILLO-GOMEZ, a/k/a "Jefferson," and JARWIN VALERO-CALDERON, a/k/a "La Fama," the defendants, during and in relation to crimes of violence for which they may be prosecuted in a court of the United States, namely, the carjacking charged in Count Two of this Complaint and the Hobbs Act robbery charged in Count Three of this Complaint, knowingly used and carried firearms, and in furtherance

of such crimes, possessed firearms, and aided, abetted, counseled, commanded, induced, and procured the use, carrying, and possession of firearms, which were brandished.

(Title 18, United States Code, Sections 924(c)(1)(A)(i) and (ii), and 2.)

## COUNT FIVE
### (Attempted Hobbs Act Extortion)

7.     From at least in or about September 2024 through at least in or about October 2024, in the Southern District of New York and elsewhere, SAMUEL GONZALEZ CASTRO, a/k/a "Klei," EFERSON MORILLO-GOMEZ, a/k/a "Jefferson," and JARWIN VALERO-CALDERON, a/k/a "La Fama," the defendants, knowingly attempted to commit extortion, as that term is defined in Title 18, United States Code, Section 1951(b)(2), and thereby attempted to obstruct, delay, and affect commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), and aided, abetted, counseled, commanded, induced, and procured the same, to wit, CASTRO, MORILLO-GOMEZ and VALERO-CALDERON threatened to kill the Victim and members of the Victim's family if the Victim did not provide CASTRO, MORILLO-GOMEZ, and VALERO-CALDERON with, among other things, vehicles from a car dealership that does business in New York and New Jersey.

(Title 18, United States Code, Sections 1951 and 2.)

## COUNT SIX
### (Firearms Use, Carrying, and Possession – Conspiracy)

8.     From at least in or about September 2024 through at least in or about October 2024, in the Southern District of New York and elsewhere, SAMUEL GONZALEZ CASTRO, a/k/a "Klei," EFERSON MORILLO-GOMEZ, a/k/a "Jefferson," and JARWIN VALERO-CALDERON, a/k/a "La Fama," the defendants, and others known and unknown, intentionally and knowingly combined, conspired, confederated, and agreed together and with each other to violate Title 18, United States Code, Section 924(c).

9.     It was a part and an object of the conspiracy that SAMUEL GONZALEZ CASTRO, a/k/a "Klei," EFERSON MORILLO-GOMEZ, a/k/a "Jefferson," and JARWIN VALERO-CALDERON, a/k/a "La Fama," the defendants, and others known and unknown, would and did, during and in relation to a crime of violence for which they may be prosecuted in a court of the United States, namely, Hobbs Act extortion, in violation of 18 U.S.C. § 1951, knowingly use and carry firearms, and, in furtherance of such crime, possess firearms, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i).

(Title 18, United States Code, Section 924(o).)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

10.     I am a Special Agent with Homeland Security Investigations and I have been personally involved in the investigation of this matter.  This affidavit is based upon my personal participation in the investigation, and my conversations with law enforcement officers, law

enforcement employees, and witnesses, as well as my review of documents. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

11.     Since at least in or about October 2024, I have been conducting an investigation of suspected members and affiliates of the transnational gang Tren de Aragua ("TDA"), including SAMUEL GONZALEZ CASTRO, a/k/a "Klei," EFERSON MORILLO-GOMEZ, a/k/a "Jefferson," and JARWIN VALERO-CALDERON, a/k/a "La Fama," the defendants. Photographs of the defendants from law enforcement databases appear below.



SAMUEL GONZALEZ CASTRO, a/k/a "Klei"



EFERSON MORILLO-GOMEZ, a/k/a "Jefferson"



JARWIN VALERO-CALDERON, a/k/a "La Fama"

12.    Based on my training and experience, my review of publicly available social media accounts, my interviews of current and former self-identified TDA members, and my personal surveillance of individuals identified by witnesses as, or otherwise believed to be TDA members, I know that TDA is a violent transnational gang, originating in Venezuela, that has established a substantial foothold in the United States, including in New York City.  In particular, I am aware that TDA members have a considerable presence in Queens and the Bronx, New York, including near 79th Street and Roosevelt Avenue in Queens.

<u>The October 11, 2024 Traffic Stop</u>

13.    Based on my participation in this investigation, my review of documents, law enforcement records, and other evidence, including surveillance video recordings, and my conversations with other law enforcement officers, I have learned, in substance and in part, the following:

a.    On or about October 11, 2024, police officers conducted a traffic stop of a silver Toyota 4Runner (the "4Runner") because the 4Runner had heavily tinted windows and was missing a front license plate.  The occupants of the 4Runner were (i) SAMUEL GONZALEZ CASTRO, a/k/a "Klei," the defendant, who was the driver, (ii) EFERSON MORILLO-GOMEZ, a/k/a "Jefferson," the defendant, who was seated in the rear passenger seat, and (iii) a woman ("Person-1"), who was seated in the front passenger seat.  Officers conducted a database check of the 4Runner and learned that both the vehicle and the rear license plate had been reported stolen.[1] CASTRO was taken into custody.

b.    After the traffic stop, police officers conducted an inventory search and found, among other items, a .380 caliber pistol inside a backpack on the backseat and a 9mm shell casing under the driver seat (the "9mm Casing").

c.    Based on my review of law enforcement records, I have learned that 9mm Casing matched other shell casings recovered from the scene of a shooting that occurred on the Long Island Expressway on or about the evening of October 5, 2024.  Video surveillance of that

---

[1]    As discussed below, the 4Runner had originally been stolen from Pennsylvania.

incident shows that, during this shooting, the occupants of a Kia sedan pulled up alongside a Mercedes G Wagon and discharged what appeared to have been fully automatic gunfire toward the G Wagon. Numerous shell casings were recovered from the Long Island Expressway at the scene of the shooting. The 9mm Casing found inside the 4Runner matched one or more of the shell casings from the October 5, 2024 Long Island Expressway shooting.

   d. Following the October 11, 2024 traffic stop and seizure of the 4Runner, law enforcement interviewed the person who originally reported that the 4Runner had been stolen (the "Original Owner"). The Original Owner, who does not reside in New York, stated, in substance and in part, that the 4Runner was stolen in Philadelphia, Pennsylvania, on or about August 25, 2024 and that the title to the 4Runner was inside the vehicle at the time it was stolen.

<u>The September 30, 2024 Carjacking and Extortion</u>

   14. On or about October 15, 2024, the Victim—who is not the Original Owner—appeared at a police station to claim ownership of the 4Runner. The Victim presented the 4Runner's title to police officers. Thereafter, law enforcement officers interviewed the Victim on several occasions. I personally participated in some of these interviews and I have discussed with other law enforcement officers interviews for which I was not present. In the course of these interviews, the Victim stated, in substance and in part, the following:

   a. The Victim works for a car dealership (the "Dealership") that operates from a lot in the Bronx, New York. The Victim sells and leases vehicles in the Bronx, New York, and commonly carries with him keys and titles for the Dealership's various vehicles. Although the Victim worked principally in the Bronx, the Dealership also maintains a place of business in New Jersey.[2]

   b. On or about September 19, 2024, the Victim purchased the 4Runner, in good faith, at a car auction and received the title. The 4Runner was the Victim's personal vehicle, which the Victim used for both work and personal purposes.

   c. On or about September 30, 2024, the Victim was socializing with a female companion (the "Companion") at parties. A friend of the Victim messaged him, inviting him to a location in the Bronx for a party in the vicinity of 1790 Prospect Avenue in the Bronx, New York (the "Purported Party Location"). The Victim drove to the Purported Party Location, with the Companion as his passenger, in the 4Runner. At the time, the Victim was carrying with him keys and titles for the Dealership's other vehicles.

   d. Upon arriving at the Purported Party Location at approximately 6:30 a.m. in the 4Runner, the Victim was greeted by a woman. Then, two men—later identified to be SAMUEL GONZALEZ CASTRO, a/k/a "Klei" and EFERSON MORILLO-GOMEZ, a/k/a "Jefferson," the defendants—approached the 4Runner brandishing guns. CASTRO and MORILLO-GOMEZ entered the vehicle.

---

[2] Based on my review of publicly available sources, I have learned that the Dealership maintains a business address in Lakewood, New Jersey.

   e. When CASTRO and MORILLO-GOMEZ initially entered the 4Runner, the Victim tried to flee. CASTRO pushed the Victim back into the 4Runner and told the Victim, in substance, that he needed to be still and that if he attempted to run, they would "blow his fucking head off." As this was occurring, the Companion was screaming. CASTRO and MORILLO-GOMEZ told the Companion, in substance, that she needed to stop screaming or they would kill her too.

   f. Inside the vehicle, CASTRO and MORILLO-GOMEZ pistol-whipped the Victim and the Companion. CASTRO and MORILLO-GOMEZ took the Victim's jewelry and the car keys and titles that were in the Victim's possession. The car keys and titles belonged to the Dealership.

   g. MORILLO-GOMEZ drove the 4Runner for a brief distance before ordering the Companion to get out of the 4Runner. The Companion took the Victim's cellphone with her.

   h. MORILLO-GOMEZ continued operating the 4Runner with the Victim inside. During this car ride, CASTRO and MORILLO-GOMEZ stated, in substance and in part, the following:

    i. CASTRO identified himself as "Klei" and MORILLO-GOMEZ identified himself as "Jefferson."

    ii. CASTRO and MORILLO-GOMEZ said that they were members of TDA and told the Victim that he should know what they are capable of.

    iii. CASTRO and MORILLO-GOMEZ demanded that the Victim provide them with $5,000 cash and three cars. Otherwise, CASTRO and MORILLO-GOMEZ would kill the Victim. CASTRO and MORILLO-GOMEZ claimed to know details relating to members of the Victim's family, including daily routines, and they threatened to kill those family members too if the Victim did not comply.

   i. Eventually, CASTRO and MORILLO-GOMEZ directed the Victim to get out of the vehicle. After exiting the 4Runner, the Victim called 911 and later retrieved his own cellphone from the Companion.

   j. During the carjacking and robbery, MORILLO-GOMEZ was carrying a gray gun with a purple bottom.

  15. Based on my review of video surveillance recordings at or near the Purported Party Location on or about September 30, 2024, I have learned, among other things, the following:

   a. At approximately 6:44 a.m., the 4Runner pulled up to the Purported Party Location. A woman wearing a yellow cap ("CC-1") walked up to the driver side of the 4Runner and appeared to engage in conversation with the occupants of the vehicle. The driver of the

4Runner—who appears to be the Victim—exited the 4Runner and at some point appeared to reenter the 4Runner.

b.    Two men—who, based on my review of law enforcement database photographs, appear to be SAMUEL GONZALEZ CASTRO, a/k/a "Klei," and EFERSON MORILLO-GOMEZ, a/k/a "Jefferson," the defendants—met directly across the street from the 4Runner. The man believed to be CASTRO was wearing a red hoodie with a cartoon figure, sunglasses, and ripped jeans. The man believed to be MORILLO-GOMEZ was wearing a white, short-sleeved shirt with a Tommy Hilfiger-style red-white-and-blue stripe across the chest, a white cap with a red-white-and-blue stripe, and dark pants. CASTRO and MORILLO-GOMEZ appeared to confer briefly, after which CASTRO made a gesture and the two men walked in opposite directions.



(CASTRO on left; MORILLO-GOMEZ on right)



(CASTRO and MORILLO-GOMEZ conferring, on left; CASTRO and MORILLO-GOMEZ
separating and walking away from each other, on right)

   c.  In the course of the investigation, I reviewed publicly viewable materials
posted on a Facebook account for the user "Eferson Trebol" (the "Eferson Facebook Account").
One of the images posted on the Eferson Facebook Account is a QR code with the hashtag
"@MORILLOEFERSON."  MORILLO-GOMEZ's first name is "Eferson."  Accordingly, I
believe the Eferson Facebook Account belongs to MORILLO-GOMEZ.  On or about
October 1, 2024, the Eferson Facebook Account posted the photograph below of MORILLO-
GOMEZ wearing what appears to be the same Tommy Hilfiger shirt and cap that he wore on
September 30, 2024.



(Photograph of MORILLO-GOMEZ on the Eferson Facebook Account)

9

   d. On or about September 30, 2024 at approximately 6:51 a.m. at the Purported Party Location, CASTRO and MORILLO-GOMEZ reconvened and together crossed the street to the 4Runner, crossing paths with CC-1, who appeared to exchange a glance with them.  CASTRO and MORILLO-GOMEZ initially approached the driver side of the 4Runner.  MORILLO-GOMEZ then circled back to the passenger side, at times leaning into the front passenger compartment and at times fully entering the rear passenger compartment, closing the door behind him.  CASTRO appeared to remain on the driver side of the 4Runner.  Due to the angle and distance of the video camera, CASTRO and MORILLO-GOMEZ's hands are not visible when they lean into and enter the 4Runner.

   e. At approximately 6:58 a.m., MORILLO-GOMEZ entered the front driver door of the 4Runner.  The 4Runner began driving away from the Purported Party Location.

   f. Video surveillance recordings from a short distance away from the Purported Party Location shows that, at approximately 6:59 a.m., a woman exited the 4Runner, holding her face and apparently sobbing.  Based on the Victim's statement that the Companion was ejected from the 4Runner by CASTRO and MORILLO-GOMEZ and that the Companion was pistol-whipped while inside the 4Runner, I believe the woman shown on the video to be the Companion.

   g. Video surveillance from the Purported Party Location shows that, at approximately 7:17 a.m.—that is, approximately twenty minutes after the 4Runner pulled away— a man who appears to be JARWIN VALERO-CALDERON, a/k/a "La Fama," the defendant, walked over to the location where the 4Runner had been parked and looked toward the direction that the 4Runner left.  VALERO-CALDERON is recognizable based on his face, his tattoos, and an ankle bracelet, as shown below.



(VALERO-CALDERON at the Purported Party Location at approximately 7:17 a.m.)

   h. Based on my review of immigration records, I know that, as of September 30, 2024, VALERO-CALDERON was required to wear an ankle bracelet for location monitoring and that, location data from that day shows that VALERO-CALDERON was at 1790 Prospect Avenue—the Purported Party Location—from approximately 5:33 a.m. to approximately 8:25 a.m.

i.      In the course of the investigation, I reviewed publicly viewable materials posted on certain Facebook accounts I believe to be used by JARWIN VALERO-CALDERON, a/k/a "La Fama," the defendant (the "Valero Facebook Accounts").  Usernames of most of the Valero Facebook Accounts contain variations of "Josue Valero" or "Jarwin Valero."  The username of one Valero Facebook Account is in Arabic and, based on publicly available sources, I believe translates to "God is love, God is love."  All of the Valero Facebook Accounts have posted numerous photographs of the same individual who, based on law enforcement database photographs, I believe to be VALERO-CALDERON.  Many of these photographs, including those below, clearly show VALERO-CALDERON wearing an ankle bracelet and also show VALERO-CALDERON's tattoos on his forearms and below his left knee.



(Photographs of VALERO-CALDERON on the Valero Facebook Accounts)

Extortion of the Victim

16.      In the course of interviews with law enforcement, the Victim also stated, in substance and in part, the following:

a.      On or about October 3, 2024, an individual later identified to be JARWIN VALERO-CALDERON, a/k/a "La Fama," the defendant, initiated a FaceTime call with the Victim.  On the FaceTime call, SAMUEL GONZALEZ CASTRO, a/k/a "Klei," the defendant, was also dialed in and was visible.  On this call, VALERO-CALDERON described himself as "Klei's" boss and said, in substance, that the Victim needed to provide $5,000 and three cars or they would kill the Victim and his family.  The Victim screen-recorded this FaceTime call, but the screen recording did not capture the audio.  The Victim also took screenshots during this FaceTime call.  I have reviewed the materials provided by the Victim related to this FaceTime call and, based

on a comparison with the law enforcement photographs discussed above,[3] I believe the individuals in the FaceTime call to be VALERO-CALDERON and CASTRO.  Still images appear below.



(Left image: VALERO-CALDERON; right image: VALERO-CALDERON on top and CASTRO on bottom)

      b.      Between on or about October 3, 2024 and on or about October 11, 2024, CASTRO called and messaged the Victim through WhatsApp.  The Victim provided examples to law enforcement of WhatsApp communications the Victim received from CASTRO.  In one communication, on or about October 9, 2024, CASTRO wrote to the Victim, in sum and substance, that if the Victim did not follow through, someone would kill the Victim.  In another communication, on or about October 10, 2024, CASTRO wrote to the Victim that CASTRO "kills people" and is "serious."  Also on or about October 10, 2024, CASTRO sent the Victim a video,

---

[3]     As discussed below, I have also seen CASTRO in person because I participated in taking CASTRO into immigration custody on or about November 6, 2024.

recorded inside the 4Runner, showing a person—presumably CASTRO himself—brandishing a gun. A still image from that recording appears below.



c.    Also on or about October 10, 2024, CASTRO sent the Victim a recording of an individual—presumably CASTRO himself—sitting inside the 4Runner, in possession of the Dealership's car keys, as shown below.



       d.      During his interviews with law enforcement, the Victim referred to CASTRO as "Klei," to MORILLO-GOMEZ as "Jefferson," and to VALERO-CALDERON as "La Fama," because the defendants used those aliases to identify themselves to the Victim. The Victim provided photographs of "Klei," "Jefferson," and "La Fama" that the Victim independently obtained through social media. Below are examples of social media photographs that the Victim provided. Based on my comparison of the photographs below with, among other things, law enforcement photographs, I believe these photographs provided by the Victim depict CASTRO, MORILLO-GOMEZ, and VALERO-CALDERON.[4]



(From left to right: MORILLO-GOMEZ, VALERO-CALDERON, CASTRO)

---

[4]      As discussed below, I also saw CASTRO in person on or about November 6, 2024 in the course of taking CASTRO into immigration custody.



(From left to right: CASTRO, VALERO-CALDERON, MORILLO-GOMEZ, unknown man)

<u>The October 5, 2024 Recovery of Car Keys and Titles</u>

17.    Based on my participation in this investigation, my review of documents, law enforcement records, and other evidence, including surveillance video recordings, and my conversations with other law enforcement officers, I have learned, in substance and in part, the following:

a.    On or about October 5, 2024, at approximately 8:00 a.m., a male 911 caller (the "911 Caller") reported seeing a man brandish a gun in the vicinity of 79th Street and Roosevelt Avenue in Queens, then enter a gray Mazda with a dented exterior.

b.    Following the 911 call, police officers responded to the area and pulled over a gray Mazda that matched the description of the vehicle given by the 911 Caller. As the gray

Mazda was pulled over, two men exited the Mazda and fled on foot. Police officers gave chase but were unable to apprehend either man.

        c.     Inside the gray Mazda, police encountered Person-1, the same woman who would later be found in the 4Runner with CASTRO and MORILLO-GOMEZ at the October 11, 2024 car stop, as described above. Inside the gray Mazda, police recovered multiple car titles and car keys. The Victim later confirmed that these car titles and car keys were taken from the Victim.

        d.     Law enforcement officers have interviewed the 911 Caller. I personally participated in at least one interview and I have discussed with other law enforcement officers one or more interviews for which I was not present. In the course of these interviews, the 911 Caller stated, in substance and in part, that the man he had seen with a gun was "Klei,"[5] and the 911 Caller identified "Klei" in video surveillance depicting the October 5, 2024 incident. Based on my participation in the investigation, including my personal participation in the arrest of SAMUEL GONZALEZ CASTRO, a/k/a "Klei," the defendant, on November 6, 2024, as described below, I believe the person the 911 Caller identified in the video surveillance as "Klei" to be CASTRO.

<u>The November 6, 2024 Console Phone</u>

        18.     On or about November 6, 2024, other law enforcement officers and I saw SAMUEL GONZALEZ CASTRO, a/k/a "Klei," the defendant, enter a vehicle in Queens, New York. Law enforcement pulled the vehicle over. The driver of the vehicle (the "Female Driver") was a woman who is a Venezuelan national without lawful immigration status. CASTRO was seated in the front passenger seat. Both CASTRO and the Female Driver were taken into immigration custody.[6] At the time, the Female Driver was taken into custody, she claimed to be the owner of a cellphone that was in the front console of the vehicle (the "Console Phone") and another phone on her person (the "Other Phone").

        19.     During a subsequent interview with law enforcement, which was audio-recorded and in which I personally participated, the Female Driver received <u>Miranda</u> warnings and agreed to answer questions. The Female Driver continued to assert ownership of the Console Phone and the Other Phone and, to demonstrate that the cellphones belonged to her, the Female Driver input the passcodes of the two devices, unlocking them. The Female Driver then provided written and oral consent for law enforcement to conduct a visual inspection of the contents of the Console Phone and the Other Phone.

        20.     As I began visually inspecting the contents of the Console Phone, I saw that the device contained numerous photographs of CASTRO, including CASTRO holding guns with other men who were holding guns. I asked the Female Driver to confirm that the Console Phone belonged to her, to which the Female Driver responded that while it was her cellphone, CASTRO

---

[5]     The 911 Caller stated, in substance and in part, that other individuals in the neighborhood had used the name "Klei" to refer to the individual the 911 Caller saw and that the 911 Caller had seen "Klei" prior to October 5, 2024.

[6]     CASTRO remains in immigration custody.

sometimes used it.  I also conducted an inspection of the Other Phone and did not see material that was relevant to the investigation.

21.    At certain points after the Female Driver had been interviewed, CASTRO spontaneously and not in response to law enforcement inquiry, asserted that the Console Phone belonged to him and provided a physical description that matched the appearance of the Console Phone.

22.    On or about November 12, 2024, the Honorable Ona T. Wang, United States Magistrate Judge, authorized a search warrant of the Console Phone.

23.    Based on my initial visual review of the Console Phone on or about November 6, 2024, and my on-going review of the Console Phone as authorized by the search warrant, I have learned that the Console Phone contains, among other things, the following:

    a.    Photographs of guns, including at least one photograph of SAMUEL GONZALEZ CASTRO, a/k/a "Klei," the defendant, posing with another individual holding a gun, as shown below.



(CASTRO on right)



(Individuals holding handguns)

      b.     In one of the photographs above, one of the guns appears to be a gray pistol with a purple frame. As discussed above, the Victim described the gun that MORILLO-GOMEZ used during the September 30, 2024 carjacking to be a gray gun with a purple bottom.

      c.     A WhatsApp conversation between the user of the Console Phone (CASTRO) and a contact saved as "Efe Causa." In the course of that conversation, "Efe Causa" sent a photograph of EFERSON MORILLO-GOMEZ, a/k/a "Jefferson," the defendant, and CASTRO, each holding a gun, as shown below. Based on this photograph and the name "Efe Causa," which resembles MORILLO-GOMEZ's first name, I believe that "Efe Causa" is MORILLO-GOMEZ.

18



d.      On or about October 27, 2024, the cellphone user (CASTRO) sent a map pin location to "Efe Causa" (MORILLO-GOMEZ).  The pin location was near 1790 Prospect Avenue, in the Bronx, New York—that is, the same location where the Victim was lured for the September 30, 2024 carjacking, as shown below.



WHEREFORE, I respectfully request that warrants be issued for the arrests of SAMUEL GONZALEZ CASTRO, a/k/a "Klei," EFERSON MORILLO-GOMEZ, a/k/a "Jefferson," and JARWIN VALERO-CALDERON, a/k/a "La Fama," the defendants, and that they be arrested, and imprisoned or bailed, as the case may be.

/s/ Michael Bonner, with permission
MICHAEL BONNER
Homeland Security Investigations

Sworn to me through the transmission of this
Complaint by reliable electronic means, pursuant to
Federal Rules of Criminal Procedure 4.1 and 41(d)(3),
this 4th day of December, 2024.

THE HONORABLE HENRY J. RICARDO
United States Magistrate Judge
Southern District of New York